IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ST. REGIS MOHAWK TRIBE OF NEW YORK,<br>412 State Route 37<br>Akwesasne, New York  13655<br><br>           Plaintiff,<br><br>v.<br><br>DIRK KEMPTHORNE,<br>in his official capacity as SECRETARY OF<br>THE INTERIOR<br>Department of the Interior<br>1849 C Street, NW<br>Room 6156<br>Washington, DC  20240<br><br>           Defendant. | Case No. _____ |

## COMPLAINT

### Introduction

1. Plaintiff St. Regis Mohawk Tribe (the "Tribe") seeks this Court's review, pursuant to the Administrative Procedure Act, of the continued failure by the Department of the Interior ("DOI") to act on the Tribe's application to take certain land in New York into trust for it. The Tribe requested in August 1996 that DOI acquire trust lands in Sullivan County, New York, for the development and operation of a tribal casino. On April 4, 2000, DOI made a determination, based upon 16 pages of detailed findings of fact, that the proposed acquisition would be in the best interest of the Tribe, and would not be detrimental to the surrounding community. In December 2006 DOI issued a 6-page Finding of No Significant [Environmental] Impact with respect to the proposed acquisition. On February 18, 2007, New York Governor

Eliot Spitzer concurred in DOI's findings that the proposed acquisition would be in the best interest of the Tribe, and would not be detrimental to the surrounding community. These agency findings, and the Governor's concurrence therein, satisfied the conditions precedent to trust acquisitions for a casino imposed by the Indian Gaming Regulatory Act, 25 U.S.C. §2719(b)(1)(A). The only remaining step is for DOI to take the land into trust pursuant to Section 5 of the Indian Reorganization Act, 25 U.S.C. §465, and the implementing regulations at 25 C.F.R. Part 151, general provisions that apply to all land acquisitions for Indians for any purpose. DOI advised the Tribe that this process should be completed within two months. The agency's previous findings and the Governor's concurrence therein effectively satisfied all of the factors relevant to this final step. Nonetheless, DOI has delayed and withheld action on the Tribe's request to acquire the trust lands, evidently because of Defendant Kempthorne's personal views opposing off-reservation gaming. In doing so, DOI and Secretary Kempthorne have violated the Administrative Procedure Act which requires timely agency action. 5 U.S.C. § 555(b).

## Jurisdiction And Venue

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1362 and 5 U.S.C. §§ 701-706. This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1361, 1651, 2201, and 2202, and 5 U.S.C. §§ 555(b) and 701-706.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because this is an action in which Defendant is an officer and employee of the United States acting in an official capacity, and a substantial part of the events or omissions giving rise to the claims herein have occurred within this judicial district.

## The Parties

4. The St. Regis Mohawk Tribe is a federally recognized Indian tribe whose reservation is located at Akwesasne, New York, along the northern border with Canada. The Tribe qualifies under the Indian Gaming Regulatory Act, 25 U.S.C. §§2701 et seq., to operate what is known as class III gaming. The Tribe operates a small casino and a bingo hall on its reservation but seeks to open a new and larger gaming facility in the Catskills area of New York, in Sullivan County, a region to which the Tribe has historical connections.

5. Dirk Kempthorne is the Secretary of the Interior and is charged by law with carrying out the duties and responsibilities of the United States as trustee for the Tribe. In his official capacity, Secretary Kempthorne is authorized to acquire lands for Indian tribes in the name of the United States to hold in trust for the Indian tribe, and to take action on a tribe's request to acquire such lands.

## BACKGROUND

### A. Statutory and Regulatory Requirements

6. Section 5 of the Indian Reorganization Act, 25 U.S.C. §465, enacted in 1934, and its implementing regulations at 25 C.F.R. Part 151, authorize the Secretary of the Interior to acquire lands for Indian tribes in the name of the United States to hold in trust for the Indian tribe, and to take action on a tribe's request to acquire such lands. This statute and its regulations apply to all tribal requests to take land into trust for any purpose.

7. In 1988, Congress enacted the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq. ("IGRA"). Congress intended IGRA "to provide a statutory basis for the

operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments[,] . . . to ensure that the Indian tribe is the primary beneficiary of the gaming operation, . . . and to protect such gaming as a means of generating tribal revenue." 25 U.S.C. § 2702.

8.   Under Section 20 of IGRA, 25 U.S.C. § 2719, tribes are prohibited from engaging in any gaming on land acquired after the date of IGRA's enactment, October 17, 1988, unless the land comes within certain exceptions. One exception is established by §20(b)(1)(A) of IGRA, 25 U.S.C.§2719 (b)(1)(A), which provides that the prohibition of gaming on post-1988 land does not apply when:

> the Secretary, after consultation with the Indian tribe and appropriate State and local officials, including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands [1] would be in the best interest of the Tribe and its members, and [2] would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination . . . .

This exception is commonly referred to as the "two-part determination." Since enactment of IGRA in 1988, a "two-part" determination has been made by the Secretary or his designee, and concurred in by the governor of the relevant state, on only four occasions.

9.   Thus, Section 5 of the Indian Reorganization Act, 25 U.S.C. §465, and Section 20 of the IGRA both apply to the acquisition of trust lands for gaming purposes. Section 5 of the Indian Reorganization Act is very general in nature and authorizes the Secretary of the Interior to acquire lands that are either "within or without existing reservations," for Indian tribes in the name of the United States to hold in trust for the Indian tribe. The criteria governing when land will be taken into trust for an Indian tribe under this

4

statute were promulgated by DOI in regulations at 25 C.F.R. Part 151. The criteria relevant to this case appear at 25 C.F.R. § 151.10 and 151.11.

10. 25 C.F.R. § 151.10, which governs on-reservation land acquisitions, provides in relevant part that:

> The Secretary will consider the following criteria in evaluating requests for the acquisition of land in trust status when the land is located within or contiguous to an Indian reservation, and the acquisition is not mandated:
> (a) The existence of statutory authority for the acquisition and any limitations contained in such authority;
> (b) The need of the individual Indian or the tribe for additional land;
> (c) The purposes for which the land will be used;
> (d) [*provision relating to acquisition for individual Indian, not applicable to tribal application*];
> (e) If the land to be acquired is in unrestricted fee status, the impact on the State and its political subdivisions resulting from the removal of the land from the tax rolls;
> (f) Jurisdictional problems and potential conflicts of land use which may arise; and
> (g) If the land to be acquired is in fee status, whether the Bureau of Indian Affairs is equipped to discharge the additional responsibilities resulting from the acquisition of the land in trust status.
> (h) The extent to which the applicant has provided information that allows the Secretary to comply with 516 DM 6, appendix 4, National Environmental Policy Act Revised Implementing Procedures, and 602 DM 2, Land Acquisitions: Hazardous Substances Determinations.

11. 25 C.F.R. § 151.11, which governs off-reservation land acquisitions, provides in relevant part that:

> The Secretary shall consider the following requirements in evaluating tribal requests for the acquisition of lands in trust status, when the land is located outside of and noncontiguous to the tribe's reservation, and the acquisition is not mandated:
> (a) The criteria listed in Sec. 151.10 (a) through (c) and (e) through (h);
> (b) The location of the land relative to state boundaries, and its distance from the boundaries of the tribe's reservation, shall be considered as follows: as the distance between the tribe's reservation and the land to be acquired increases, the Secretary shall give greater scrutiny to the tribe's justification of anticipated benefits from the acquisition. The Secretary shall give greater weight to the concerns raised pursuant to paragraph (d) of this section.
> (c) Where land is being acquired for business purposes, the tribe shall provide a plan which specifies the anticipated economic benefits associated with the proposed use.

5

    (d) Contact with state and local governments pursuant to Sec. 151.10 (e) and (f) shall be completed as follows: Upon receipt of a tribe's written request to have lands taken in trust, the Secretary shall notify the state and local governments having regulatory jurisdiction over the land to be acquired. The notice shall inform the state and local government that each will be given 30 days in which to provide written comment as to the acquisition's potential impacts on regulatory jurisdiction, real property taxes and special assessments.

12. The regulations also provide that the Secretary "*shall* review all requests and *shall promptly* notify the applicant in writing of his decision." 25 C.F.R. §151.12(a) (emphasis added). If the Secretary denies a request, he must "advise the applicant of that fact and the reasons therefor in writing." *Id.*

### B. The Tribe's Request to Acquire Land In Trust

13. On August 1, 1996, the Tribe submitted a request to the Secretary of the Interior to acquire a 29.31 acre parcel in trust for gaming purposes in the Village of Monticello, in Sullivan County, New York, at the Monticello Raceway site. The Eastern Regional Office of the Bureau of Indian Affairs ("BIA"), an agency of DOI, issued a Finding of No Significant Impact ("FONSI") on September 24, 1998, based on an Environmental Assessment ("EA") dated April 22, 1998. The EA was revised in July 1999, and the BIA Eastern Regional Office issued a revised FONSI on October 28, 1999, and recommended approval of the Tribe's trust application on October 29, 1999.

14. On April 4, 2000, Kevin Gover, then the Assistant Secretary for Indian Affairs, acting for the Secretary under delegated authority, made the "two-part determination" required by IGRA Section 20(b)(1)(A), and wrote to New York Governor Pataki requesting his concurrence in the determination. His letter stated:

    Based on the application and its supporting documentation, including comments received from State and local government officials, and officials of nearby tribes, the Department has made findings of fact

6

>supporting the two-part determination required under Section 20(b)(1)(A) of the IGRA.
>
>Based on these findings, I have determined that the gaming establishment in the 29.31 acre parcel of land located in Monticello New York would be in the best interest of the Tribe and its members and would not be detrimental to the surrounding community.

15. Assistant Secretary Gover's letter enclosed 16 pages of detailed Findings of Fact supporting the two-part determination. In support of the determination that the acquisition would be in the best interests of the Tribe, the Findings of Fact concluded that the casino was projected to generate substantial annual revenues for the Tribe, and to create jobs for tribal members and reduce tribal unemployment. In support of the determination that the acquisition would not be detrimental to the surrounding community, the Findings of Fact noted that State and local officials had been consulted, that the Town of Thompson supported the agreement, and that a Cooperation Agreement between the Tribe's developer and the Village of Monticello met the concerns of the Village and of Sullivan County and addressed various project impacts. The Findings of Fact also concluded that the casino would boost the economy of the region, generate employment and income for local residents, and generate revenues from hotel taxes to local governments.

16. Thereafter further efforts to complete the process and take the Monticello Raceway site into trust for the Tribe were held in abeyance for several years while the Tribe unsuccessfully pursued a different casino project at another site in the Catskill region. The Tribe was advised by DOI officials that the two-part determination issued in April 2000 was still valid and could still be concurred in by the Governor. On August 1, 2005, the Tribe reactivated its "fee to trust" application for the Monticello Raceway site.

17.     DOI advised the Tribe that revisions to the EA needed to be made, and the Tribe revised the EA. On October 31, 2006, the BIA Eastern Regional Office submitted a final EA to the BIA Central Office with a recommendation to take the land into trust and to issue a FONSI.

18.     On December 21, 2006, Associate Deputy Secretary of the Interior James Cason signed the FONSI for the proposed agency action: "to approve the [Tribe's] request to take approximately 29.31 acres of fee land into trust for the purpose of Class III gaming, and transmitted this FONSI to the Tribe. The FONSI noted that "[t]he proposed project will improve the socioeconomic conditions for both the Tribe and Sullivan County," and further that "[t]he increased costs to local governments for public schools, roads, police, emergency medical care, solid waste, utilities and other socioeconomic impacts will be fully mitigated through the local agreements between the Tribe and local governments," referring to the Cooperation Agreement with the Village of Monticello, and an agreement between the Tribe and Sullivan County.

19.     On February 18, 2007, in a letter to Secretary Kempthorne, the Governor of New York, Eliot Spitzer, concurred in DOI's April 2000 two-part determination, and urged the Secretary to take the land into trust expeditiously. Governor Spitzer's letter also indicated that a gaming compact had been entered into between New York and the Tribe to govern gaming on the Monticello site. The New York State legislative had authorized up to three tribal casinos in the Catskills region in October 2001. N.Y. Exec. Law §12. All local jurisdictions which will be impacted by the Tribe's land acquisition also continue to support the fee to trust application and have urged DOI to approve it.

20. Having received a FONSI, the two-part secretarial determination, and the Governor's concurrence therein, there are no impediments to final DOI action on the Tribe's request to acquire the land and take it into trust. DOI has not identified any deficiencies in the request nor stated that it requires any further information or data in order to process the request. The Eastern Regional Office of the BIA has recommended that the request be granted, as has the BIA's Office of Indian Gaming Management.

21. George Skibine, Acting Deputy Assistant Secretary for Policy and Economic Development, had advised the New York Governor's office that DOI would complete its review of the land-into-trust request within two months of receiving the governor's concurrence. Yet, more than eight months after receiving that concurrence, DOI has not acted on the request.

22. DOI's previous findings and actions in connection with the two-part determination and the FONSI, together with Governor Spitzer's concurrence therein, effectively satisfy all of the relevant factors established by 25 C.F.R. §§ 151.10 and 151.11 for taking the Monticello Raceway site into trust for the Tribe. There is no principled or rational basis for DOI to fail or refuse to take the land into trust given the findings and determinations that already have been made.

23. On information and belief, DOI has not acted on the Tribe's request because of Secretary Kempthorne's personal views opposing gaming, or at least off-reservation Indian gaming.

   A. As Governor of Idaho from January 1999 to May 2006, Mr. Kempthorne was opposed to off-reservation casinos. In a June 27, 2007, news article reporting on a meeting between New York Senator Charles Schumer and Secretary Kempthorne,

Senator Schumer was quoted as saying: "[Secretary Kempthorne] has never liked casinos off traditional lands. He told me he refused a casino in Idaho when the tribal land was in the same state, but 350 miles away from their traditional lands."

    B.    On information and belief, Secretary Kempthorne has told other elected officials who support the Tribe's application, including Governor Spitzer and Congressman Maurice Hinchey (whose district includes the site proposed to be acquired in trust), that he personally opposes off-reservation gaming.

    C.    DOI officials have publicly acknowledged Secretary Kempthorne's opposition to off-reservation gaming. Associate Deputy Secretary of the Interior James Cason stated at a meeting of the United South and Eastern Tribes in February 2007, that Secretary Kempthorne was "trying to reconcile his views as governor [on off-reservation gaming] and his activities as governor with his role as secretary." As reported in an October 1, 2007, news article, a DOI spokeswoman confirmed that Mr. Cason has said of Secretary Kempthorne: "As secretary, he has a different role to play, and he has to reconcile his public policy stance with his role as a trustee." Commenting on proposed off-reservation casinos in Kenosha, Wisconsin and Beloit, Michigan, George Skibine, Acting Deputy Assistant Secretary for Policy and Economic Development, reportedly told the press on or about July 9, 2007, "Given the Secretary's position on off-reservation gaming it is an uphill battle." At a bar conference in Washington, D.C., on March 16, 2007, Mr. Skibine reported that in late 2006, Secretary Kempthorne informed Interior staff that he has problems with off-reservation gaming.

    24.    In an evident effort to concoct a rationale for delaying or refusing the Tribe's request to take the Monticello Raceway site into trust, when DOI approved the FONSI for the

10

trust acquisition on December 21, 2006, and transmitted it to the Tribe, the agency cautioned that "we consider this present action to be narrow in scope and should not be regarded as suggesting a future commitment to take the subject land into trust …." DOI, however, did not identify any deficiencies or concerns that were specific to the Monticello Raceway site or the Tribe's request. Rather, it voiced concerns of a more general nature that relate to off-reservation gaming in general and which either were not valid or were inapplicable to the Tribe's request.

  A. The letter expressed concerns with "so-called 'reservation-shopping,'" and said that "we share the concerns that many have expressed with off-reservation gaming[.]" The letter also references bills introduced in the 109th Congress to restrict or eliminate gaming on newly-acquired trust lands. This reference was completely inapposite because these bills were not enacted and in fact the 109th Congress had, for all practical purposes, drawn to a close prior to the date of the letter.

  B. The letter expressed DOI's expectation that similar bills would be introduced in the 110th (current) session of Congress. To date, however, the 110th Congress has not amended or repealed Section 20(b)(1) of the IGRA, nor has the Administration proposed any such legislation.

  C. The letter further stated that DOI "will be reviewing the regulations that govern the processing of fee-to-trust applications (25 CFR Part 151). We anticipate changes to the rules that may result in fewer off-reservation properties being accepted into trust." To date, however, the regulations at 25 C.F.R. part 151 have not been amended, nor has any amendment been proposed. In any event, any new regulatory requirements would not apply retroactively, and could not be lawfully applied, to the

Tribe's application that has already received the two-part determination, the Governor's concurrence therein, and a FONSI.

D. The letter stated that there would be future reviews of the entire Section 20 process that "may result in fewer off reservation properties being accepted into trust." Any such changes, however, would not apply retroactively, and could not be lawfully applied, to the Tribe, which has already received the two-part determination, the Governor's concurrence therein, and a FONSI.

### COUNT ONE - VIOLATION OF THE APA - AGENCY ACTION UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED

25. The allegations of paragraphs 1 through 23 are incorporated herein.

26. The Administrative Procedure Act ("APA") requires administrative agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b). The regulations governing land-in-trust applications provide that the Secretary "*shall* review all requests and *shall promptly* notify the applicant in writing of his decision" on land-in-trust applications. 25 C.F.R. §151.12(a) (emphasis added).

27. The Secretary's failure and refusal to act on the Tribe's acquisition request for the Monticello Raceway site violates' his obligation to act on the request within a reasonable time and to notify the Tribe promptly of his decision, and constitutes agency action unlawfully withheld or unreasonably delayed within the meaning of 5 U.S.C. § 706(1).

28. The Secretary's failure and refusal to act on the Tribe's request has deprived, and continues to deprive, the Tribe of its ability to develop its planned casino in Sullivan County for the governmental purposes set forth in IGRA, 25 U.S.C. §§ 2702(1), 2710(b)(2)(B), 2710(d)(1)(A)(ii), and to realize the benefits of the acquisition recognized by

DOI in the two-part determination and the FONSI, and causes severe and irreparable injury to the Tribe and its members.

29. The Secretary's failure and refusal to act on the Tribe's request also causes irreparable injury to the New York communities and local governments which will benefit from its development by the Tribe.

30. Under these circumstances, the Court has the authority to compel the Secretary to act. 5 U.S.C. § 706(1) ("the reviewing court *shall compel* agency action unlawfully withheld or unreasonably delayed")(emphasis added); 28 U.S.C. § 1361; 28 U.S.C. § 1651.

### COUNT TWO - VIOLATION OF THE APA - AGENCY INACTION THAT IS ARBITRARY AND CAPRICIOUS AND CONTRARY TO LAW

31. The allegations of paragraphs 1 through 30 are incorporated herein.

32. There is no principled or rational basis for the Secretary to fail and refuse to act on the Tribe's request or to refuse to take the Monticello Raceway site into trust .

33. Section 5 of the Indian Reorganization Act, 25 U.S.C. § 465, and the implementing regulations at 25 C.F.R. Part 151 set forth the law applicable to the Tribe's request and the Secretary's consideration of the same. The Secretary, however, has failed to limit his consideration to the law, and instead has considered, and is considering, other impermissible factors, most importantly including his own views opposing off-reservation Indian gaming, to the detriment of the Tribe.

34. By failing to act in compliance with applicable law and instead delaying and withholding agency action on the Tribe's request based upon considerations outside of those

set forth in regulation and statute, the Secretary has abused his discretion and acted arbitrarily, capriciously, in bad faith, and otherwise not in accordance with the law.

35. Under these circumstances, the Court has the authority to compel the Secretary to act in accordance with the law, and to limit his consideration of the Tribe's request to the criteria set out in current law. 5 U.S.C. §706 (1) & (2); 28 U.S.C. §1361; 28 U.S.C. §1651; 28 U.S.C. §§ 2201 et seq.

**PRAYER FOR RELIEF**

WHEREFORE, the Tribe hereby requests the following relief:

1. A declaration that Secretary Kempthorne has unreasonably and unlawfully delayed and withheld action on the Tribe's "fee to trust" request;

2. An order compelling Secretary Kempthorne to act on the Tribe's "fee to trust" request within thirty (30) days;

3. A declaration that Secretary Kempthorne has abused his discretion and acted arbitrarily and capriciously, in bad faith and not in accordance with law by considering criteria outside of those set forth in applicable law;

4. An order limiting the factors Secretary Kempthorne may consider in reaching a decision on the trust application to those imposed by law; and

5. Such other relief as is just and equitable.

          Respectfully submitted,

          _____/s/_____
          Jerry C. Straus
          D.C. Bar No. 12724
          Michael L. Roy
          D.C. Bar No. 411841
          Marsha K. Schmidt
          D.C. Bar No. 387971
          Hobbs, Straus, Dean & Walker, LLP
          2120 L Street, NW, Suite 700
          Washington, DC 20037
          202-822-8282

          Steven D. Gordon
          D.C. Bar No. 219287
          Shenan R. Atcitty
          D.C. Bar No. 475807
          Stephen J. McHugh
          D.C. Bar No. 485148
          Holland & Knight LLP
          2099 Pennsylvania Ave Suite 100
          Washington, D.C. 20006
          (202)-955-3000 (phone)
          (202)-955-5664 (fax)

          Counsel for Plaintiff
          St. Regis Mohawk Tribe

Dated: October 31, 2007

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

St. Regis Mohawk Tribe

88888

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** — 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Michael L. Roy
Hobbs, Straus, Dean & Walker, LLP
2120 L. Street, NW, Ste. 700
Washington, DC 20037

**DEFENDANTS**

Dirk Kempthorne, Secretary of the Interior

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LA

Case: 1:07-cv-01958
Assigned To : Roberts, Richard W.
Assign. Date : 10/31/2007
Description: Admn. Agency Review

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- ⊙ 2 U.S. Government Defendant
- 3 Federal Question (U.S. Government Not a Party)
- 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**A. Antitrust**
- ☐ 410 Antitrust

**B. Personal Injury/ Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**⊙ C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

**D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**E. General Civil (Other)** OR **F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

V. ORIGIN
● 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Agency action unlawfully withheld/unreasonably delayed. 25 U.S.C. § 465; 25 C.F.R. § 151.12(a); 5 U.S.C. §§ 555 (b) & 706 (1)

VII. REQUESTED IN COMPLAINT    CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐    DEMAND $ _____    Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

VIII. RELATED CASE(S) IF ANY    (See instruction)   YES ☐   NO ☒    If yes, please complete related case form.

DATE 10/31/07   SIGNATURE OF ATTORNEY OF RECORD _____

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.